1            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF KENTUCKY
2                  SOUTHERN DIVISION

3

4   UNITED STATES OF AMERICA,

5        PLAINTIFF,

6                                   Criminal No. 6:12-CR-67
    VS.                             At London, Kentucky
7                                   September 6, 2013
                                    10:59 a.m.
8   ERIC LANCE WHITSON,

9        DEFENDANT.

10

11         TRANSCRIPT OF SENTENCING PROCEEDINGS BEFORE
              U.S. DISTRICT JUDGE DANNY C. REEVES
12

13

14   APPEARANCES:

15

16
    For the Plaintiff:    Hon. W. Samuel Dotson
17                        Assistant United States Attorneys
                          650 Meyer Baker Road
18                        Suite 300
                          London, Kentucky  40507-1612
19                        (606) 685-4831

20

21   For the Defendant:   Hon. R. Michael Murphy
                          Law Office of R. Michael Murphy
22                        709 Millpond Road
                          Lexington, Kentucky  40514
23                        (859) 338-8422

24

25        Proceedings recorded by mechanical stenography,
      transcript produced by computer.

SANDY C. WILDER, RMR, CRR, OFFICIAL COURT REPORTER
310 South Main Street, Suite 317, London, Kentucky  40745
(859) 516-4114

```
1              [IN OPEN COURT]
2          THE COURT:  Thank you.  And good morning,
3  everyone.
4          Madam Clerk, if you could call the matter
5  scheduled for 11:00, please.
6          THE CLERK:  Yes, Your Honor.  London Criminal
7  case 12-67, the United States of America versus Eric
8  Lance Whitson, also known as Eric L. Whitson.
9          THE COURT:  Thank you.  And if counsel could
10 state their appearances, please.  Mr. Dotson, we'll
11 start with you.
12         MR. DOTSON:  Sam Dotson for the United
13 States, standing in for Jason Parman, Your Honor.
14 Good morning.
15         THE COURT:  All right.  Thank you.  Morning.
16 Mr. Murphy, good morning.
17         MR. MURPHY:  Good morning, Your Honor.
18 Michael Murphy.  I'm here on behalf of Mr. Whitson.
19 He's seated to my immediate right.  We're prepared for
20 sentencing.
21         THE COURT:  All right.  Thank you.  As the
22 clerk indicated, this matter is scheduled for
23 sentencing hearing this morning.  Before we proceed
24 with the hearing, let me first confirm that
25 Mr. Whitson has had the opportunity to review his
```

1  presence report and also to discuss the report to

2  his satisfaction with his attorney, Mr. Murphy; is

3  that correct?

4          THE DEFENDANT:  Yes, Your Honor.

5          MR. MURPHY:  Yes, Your Honor, he has.

6          THE COURT:  All right.  Thank you.

7  Mr. Whitson, your presence report will be placed in

8  the file under seal pursuant to Rule 32.  It is

9  available if you should need it for any reason or if

10  the attorneys should need it, but it's not available

11  for the general public to review, and you do

12  understand that?

13          THE DEFENDANT:  (Nod affirmatively).

14          THE COURT:  All right.  There are no

15  objections to the presence report, and, therefore,

16  I'll adopt the findings that are contained in the

17  report, as well as the guideline calculations, which I

18  will review in just a moment with the parties.

19          I'll also note that there were two sentencing

20  memorandums filed in the case, one prior to

21  Mr. Murphy's entry into the matter, and then he's

22  filed a sentencing memorandum recently.

23          There were a number of letters that were also

24  filed in support of the defendant in the case.  I've

25  considered all of that information, and will certainly

1  consider that in imposing the sentencing in this

2  matter.

3         I do advise the parties that if there are any

4  additional matters that you would like to call to my

5  attention that are relevant in sentencing under Title

6  18, Section 3553, please call those to my attention

7  during allocution in the case.

8         With regard to the guideline calculations, I

9  will call the parties' attention to the presentence

10 report beginning at paragraph 19 which indicates that

11 the 2012 Edition of the Guideline Manual has been used

12 in this matter.  After the specific offense

13 characteristics have been applied in the case to the

14 base offense level, the adjusted offense level in the

15 case becomes a level 36.  There was a three-level

16 reduction shown for acceptance of responsibility.  And

17 I believe at the time of the plea and also pursuant to

18 the terms of the plea agreement, I believe the United

19 States intends to move for the third level of

20 acceptance credit at this time under Section 3E1.1B of

21 the sentencing guidelines; is that correct,

22 Mr. Dotson?

23        MR. DOTSON:  It is, Your Honor.  Pursuant to

24 the plea agreement and the defendant's timely guilty

25 plea, the United States will make that motion at this

1 time.

2          THE COURT:  All right.  Thank you.  I will

3 sustain that motion applying the three levels for

4 acceptance credit.  That does reduce the total offense

5 level to a level 33.

6          Mr. Whitson does not have any criminal

7 history points, and that would place him in a Criminal

8 History Category I for the purposes of calculating the

9 guideline range.

10          In this case, the sentencing guideline range

11 would be a range of 135 to 168 months, based upon

12 those calculations.  However, in this particular case,

13 his guilty plea to Count 1 of the indictment carries a

14 mandatory minimum term of 15 years incarceration.  The

15 statutory penalties would be not more than 15 years --

16 I'm sorry, not less than 15 years and not more than 30

17 years under Count 1.  Count 4 would be not more than

18 ten years.  Therefore, the guideline range in the case

19 would become a range of 180 months, and that would be

20 pursuant to 5G1.2, and that's set forth in paragraph

21 92 of the presentence report.

22          The term of supervised release in the case

23 would be not less than five years for both Counts 1

24 and 4, and the Court could impose up to a term of life

25 and supervision.  I will ask the parties to address

1  not only the term of supervised release during

2  allocution, but also the conditions of supervised

3  release.  The standard conditions that are often

4  applied in this district are set forth in the

5  presentence report at paragraph 96.  If the parties

6  object to any specific condition, I do want to hear

7  from you on that.  And also, I do want the parties to

8  address not only the terms, but also the length of

9  appropriate supervision in the case.

10         The fine range in this matter would be a

11  range of $17,500 to $175,000, and the fine range is

12  set forth in paragraph 100.  And, again, those are the

13  relevant calculations that the Court has adopted as

14  set forth in the May 21st, 2013 presentence report.

15         Are there any other motions to be taken up

16  before we proceed with allocution?

17         MR. DOTSON:  Your Honor, pursuant to the plea

18  agreement, the United States would move to dismiss

19  Counts 2 and 3 of the indictment.

20         THE COURT:  That motion will be sustained.

21  Those counts will be dismissed effective upon entry of

22  the judgment in the case.  All right.  Thank you.  And

23  no other motions to be taken up by the government.

24         Mr. Murphy, any additional matters to be

25  taken up before allocution?

1        MR. MURPHY:  Not that I'm aware of, Your

2  Honor.

3        THE COURT:  Okay.  Thank you.  Mr. Murphy,

4  I'll hear from you at this time, and also from

5  Mr. Whitson.  I'll give the government a chance to

6  respond, but I will give you the last word if you'd

7  like to take it.  You may proceed.

8        MR. MURPHY:  May I use the lectern, Your

9  Honor?

10        THE COURT:  Yes, sir, certainly.

11        MR. MURPHY:  If, Your Honor please, I know

12  it's your practice to very thoroughly consider

13  anything that's already been filed in the record, so

14  I'll not touch on the matters specifically that are

15  set out in Mr. Cox's memorandum with attachments and

16  also my supplemental sentencing memorandum.

17        This is -- in a way, this case is a bit of a

18  tragedy, Your Honor.  It's a sad day to be here for

19  Mr. Whitson.  It's a sad day for his parents.  Today's

20  his father's birthday.  As you can see from the back

21  of the courtroom, he has a large support group of

22  family and friends of the family.  He's well known in

23  the community and well thought of.  I think the

24  attachments to the original sentencing memorandum

25  speak volumes on what the, I guess, the feeling in the

1  community is, including the victim and the victim's

2  family.  I think everyone feels that it's a tragic

3  situation because Mr. Whitson is going to face such a

4  horrendous sentence that can't be helped.  I suspect

5  had Mr. Whitson been aware of what the consequences

6  could have been, and I'm satisfied he wasn't aware of

7  that, we wouldn't be here.  I'm satisfied that had he

8  used better judgment and thought this through a little

9  more, that we wouldn't be here, but we are here.

10      Mr. Whitson, I'm convinced from talking to

11 him, is a man of faith, and he sees this tragic event

12 as being an obstacle that's been placed in his path by

13 the good Lord, and he is ready to deal with it.  He

14 pretty much knows what's coming in this case.

15      The case guidelines are the 180 because that

16 is the statutory minimum that the Court cannot go

17 below without a motion from the United States, and

18 we're not complaining that there's no motion, but

19 nothing was done to trigger such a motion.

20      THE COURT:  This is one of those cases where

21 certain provisions of the guidelines really don't come

22 into play very often.

23      MR. MURPHY:  Exactly.

24      THE COURT:  5K1.1, for example.

25      MR. MURPHY:  Exactly.  And that opportunity

1 just didn't present itself.  But we're not complaining
2 about that.  I would just again reiterate the fact
3 that the guideline range is lower than what the
4 statute is, and that tells me from having worked some
5 of these cases before and having seen other attorneys
6 work the cases, and that's both as a prosecutor and
7 the defense attorney, that he's at the lower end of
8 the spectrum.  There are other production cases that I
9 have seen that are so horrendous that the guidelines
10 are up there close to life in prison, as it should be
11 in those cases.  But that just tells me that in the
12 full range of the production cases, that he is at the
13 lower end, and we would hope that the Court would
14 consider that.  Obviously, we want a sentence of 180
15 months; that sounds a bit strange to ask for that much
16 time, but that's the low end of what you can do here
17 today.  We don't have a lot to work with.  I don't
18 think any factors have been identified that would
19 justify going outside the guideline range.  In fact, I
20 talked to Mr. Brandon Hall who wrote the report, and
21 he said in that paragraph there at the end where I
22 talked about there are factors for outside, he said I
23 meant actually below because that's where the
24 guidelines actually are, and we're certainly of the
25 opinion, and I think that the community would be of

1  the opinion that the lowest sentence allowed would be

2  the appropriate sentence in this case.  That's 15

3  years, Your Honor, and Mr. Whitson will be

4  approximately 50 years old when he gets out.

5       The restrictions that are suggested on our

6  part, we'd have to admit, those are the restrictions,

7  although they're very drastic and very restrictive,

8  he's aware that he'll face that for a long period of

9  time.  Now, whether he needs to be under that kind of

10  supervision for life, I'm not sure that's necessary.

11  The one thing that is not mentioned in the sentencing

12  memorandum, Your Honor, is that for offenders such as

13  Mr. Whitson are qualified to be placed in what's

14  called the SOMP.  That's the acronym.  That's the Sex

15  Offender Management Program.  That's in, I believe

16  it's Section 3621 of Title 18.

17       THE COURT:  Yes, sir.

18       MR. MURPHY:  Sub (f) contemplates that.  I

19  think he would be an ideal candidate for that.  I

20  think that they offer treatment, they offer

21  counseling.  It's a program in which he would be with

22  people who have committed like offenses.  They would

23  be segregated.  And I've talked to one of the regional

24  counsel attorneys for BOP about this, specifically

25  about this case, and that we are going to ask the

1  Court to recommend that he be evaluated, and if

2  qualified, which I certainly believe he will, that he

3  be placed in the bureau's Sex Offender Management

4  Program, which is, again, they call it the SOMP.

5          Each region in the United States, and when I

6  say "region," I'm talking about the way the prisons

7  are separated out, like southeast region, south

8  central region, there's one facility that has the

9  SOMP, and we would recommend that he be placed in that

10  program, and we would ask that he -- that the Court

11  recommend that he be sent to one of those institutions

12  as close as possible to his home.  I know that's not

13  always possible.  I don't think any of the Kentucky

14  institutions have the SOMP.  The last client I had

15  wound up in Seagoville, Texas, I believe.

16          THE COURT:  I believe there's a facility at

17  Buckner, North Carolina, if I'm not mistaken, that

18  might be the closest.

19          MR. MURPHY:  That would be the southeast,

20  right.  But we ask for that recommendation.  I think

21  it's very important, and I certainly think Mr. Whitson

22  qualifies.  I don't think he's one of these people

23  that -- whose offense would, if you look at it from a

24  common sense standpoint is like, you know, we can

25  never fix that person.  That person's always going to

1  be that sadistic or whatever.  But we don't have that
2  here, and I think that speaks volumes in his favor.
3          I think he has a few remarks, Your Honor, and
4  he doesn't want the Court to think that he in any way
5  is making excuses for his conduct.  He knows what he
6  did.  He understands the seriousness of it.  Like I
7  said, this is a huge obstacle that's placed in his
8  path that's going to cut out some of the best years of
9  his life, but he's -- he's willing to deal with that,
10  and he basically, as they say, is ready to take his
11  medicine.
12          THE COURT:  All right.  Thank you,
13  Mr. Murphy.  Mr. Whitson?
14          THE DEFENDANT:  It's like he -- it's like my
15  attorney said, it's a road block, but it's a road block
16  that I can get beyond.  I do plan to finish my college
17  education.  I plan to try and get a paralegal degree,
18  and, you know, I know this will follow me for --
19  basically forever, but it's like I told -- talked to
20  Mr. Murphy about.  My thoughts were I could always get
21  a job more in the legal profession once I'm ever out,
22  that they would be more apt to look beyond, you know,
23  the past mistake.
24          THE COURT:  All right.  Thank you, sir.
25  Thank you.  Mr. Dotson.

1        MR. DOTSON:  Your Honor, as it relates to the

2   appropriate sentence, the United States is somewhat

3   constrained by its recommendation in the plea

4   agreement, but the conduct in the 3553(a) factors were

5   taken into account, I think, in crafting that plea

6   agreement.  We do believe that a guideline sentence,

7   which is the mandatory minimum of 180 months, is

8   sufficient to meet all those 3553(a) factors.  We

9   don't think anything beyond that is needed in this

10  particular case.  I believe that sentence would

11  reflect the nature and circumstances of the offense,

12  the history and characteristics of this particular

13  defendant who does have some positives in his past

14  looking through the presentence investigation report.

15  It promotes respect for the law, will provide just

16  punishment, and we believe it will act as a deterrent

17  from future conduct.  Not only that, a sentence of

18  that level will provide the defendant with the

19  treatment opportunities that's necessary to help him

20  overcome this type of behavior.

21        I'm not terribly familiar with the SOMP, but

22  certainly, it seems like that type of program or that

23  type of facility would fall within those treatment

24  guidelines, and the United States would have no

25  objection to the request of defense that the Court

1   make that recommendation.  We've looked at the term of

2   supervised release and the conditions as the Court

3   discussed prior to the hearing.  I looked carefully at

4   those again this morning.  I believe all the standard

5   conditions are appropriate.  I don't see any of those

6   that the United States feels the need to be removed,

7   changed, or altered.

8           With regard to the term of supervised

9   release, the United States would ask the Court to

10  impose a lifetime term of supervised release, and

11  here's why:  While I agree with Mr. Murphy in the

12  sense that this may not be the most disturbing conduct

13  that we see in the context of these types of cases,

14  that's really a subjective scale.  It's still

15  disturbing.  And the fact is, it's still a production

16  case in which this defendant actively made efforts to

17  utilize a minor to produce these images.  For those

18  reasons, we do believe that the lifetime status would

19  be appropriate.  However, what we would ask the Court

20  to do is to set a status conference ten years down the

21  road to bring the defendant back in, see where he is

22  in his life, how he's doing with regard to those

23  conditions, how he's progressing, with the possibility

24  of potentially reducing the term, or maybe even

25  altering some of the conditions at that point, Your

1    Honor.  We believe that that would be appropriate and

2    would meet with the recent case law from the Sixth

3    Circuit as it relates to supervised release and the

4    types of considerations that go into that.

5           For those reasons, we believe that would be

6    the appropriate sentence.  We don't believe this

7    defendant is able to -- capable of paying a fine.  I

8    think that would be a hardship on him, and we're not

9    asking the Court to impose that.

10          THE COURT:  All right.

11          MR. DOTSON:  Thank you, Judge.

12          THE COURT:  Thank you, Mr. Dotson,

13   Mr. Murphy, any final comments or thoughts?

14          MR. MURPHY:  No.  I would agree with the

15   suggestion that the status conference be set at some

16   point in time after he's done a substantial amount of

17   supervised release to just see what Mr. Dotson says,

18   see where he is and how he's doing.

19          THE COURT:  All right.

20          MR. MURPHY:  And then modify, if necessary.

21          THE COURT:  Thank you.  As the attorneys are

22   aware, this Court has limitations in terms of the

23   sentence to be imposed in the case -- in terms of the

24   length of the sentence to be imposed, but there are

25   other factors that this Court takes into

1 consideration, and they include what's appropriate

2 during a period of supervised release, how long should

3 supervision be imposed in the case.  And in this

4 particular case, and in most of these cases, quite

5 frankly, cases of this nature, the Court really

6 focuses on supervision more so than a term of

7 incarceration because many times the Court does have

8 limitations in terms of mandatory minimums that may be

9 applied in a case.  There are cases in which a

10 defendant should be sentenced to a term in excess of

11 the mandatory minimum.  We often think of mandatory

12 minimum as that's always going to be the sentence.

13 Well, that's not always the case because there are

14 some defendants that should be sentenced to a greater

15 term.  This is not one of those cases.  This is a case

16 in which the term of incarceration, the minimum has

17 been set by Congress, and I believe that that is

18 sufficient to meet all of the statutory factors.  But

19 it's incumbent upon the Court nonetheless to identify

20 those factors.

21          The Court takes into account the guidelines

22 as a starting point.  The guideline range in this case

23 does become 180 months because it is higher than what

24 the guideline range otherwise would be.  So the

25 guideline range is the mandatory minimum in the case.

1   In making a decision as to whether that's an

2   appropriate sentence, the Court looks at the nature

3   and circumstances of the offense, as well as the

4   history and characteristics of the defendant.  Some of

5   those same factors also apply to issues of supervised

6   release to be imposed.

7           In this case, as Mr. Dotson correctly pointed

8   out, Count 1 is a production count.  It's a little bit

9   unusual in terms of the type of production.  But it is

10  a production count.  And then there's also Count 4,

11  which the Court will also consider, but the term of

12  incarceration is really being driven by the production

13  count.

14          In terms of possession, the limitation is ten

15  years, so the maximum that will be imposed for Count 4

16  will be ten years, but it'll run concurrent with the

17  term for Count 1.

18          When I look at the other factors, they

19  include the need for the sentence to reflect the

20  seriousness of the offense, the need to promote

21  respect for the law and provide for just a

22  punishment.  Congress believes this is a very serious

23  offense, as do I.  I consider this to be a very

24  serious offense.

25          Now, there has been some reference made to

1  victims, and there are two victims, or at least a

2  victim of the production count and a father of the

3  victim that have indicated that they believe that a

4  term of incarceration would not be appropriate.  But

5  they're not the only victims in the case.  The Court

6  also considers the victims that would be subject of

7  Count 4 of the production -- I'm sorry, the possession

8  count.  As I understand, they have not submitted

9  statements or request for payment of any expenses that

10  have incurred.  Mr. Dotson, is that accurate?

11         MR. DOTSON:  That is my understanding.

12         THE COURT:  And the Court has to consider any

13  victim statements and request for any payment under

14  the Victim Act itself, and is not --

15         MR. DOTSON:  And our office has not received

16  anything in that regard that I'm -- that I've been

17  made aware of, Judge.

18         THE COURT:  But the Court, of course, does

19  acknowledge the number of images that are involved in

20  this particular case.  The Court also considers the

21  history of the defendant in terms of his use of the

22  Internet to download these images and to possess the

23  images.

24         Treatment is appropriate in this case as both

25  the United States and the defendant recognize.  The

1  defendant also recognizes that he does need some

2  treatment, he does need some help.  It's important,

3  perhaps equally important for friends and family

4  members to recognize that as well.

5       You can't make excuses for conduct.  You have

6  to accept the conduct, and you have to reform your

7  conduct to make sure that it doesn't happen again.  To

8  do that, you're going to need your family's help and

9  support.  You will finish your term of incarceration,

10  and you will receive treatment while you're

11  incarcerated, and you have accepted responsibility,

12  and, of course, your friends and family have to

13  acknowledge that.  They have to understand that you've

14  made a mistake, and that you're going to attempt to go

15  beyond those mistakes to get beyond the mistakes, and

16  they're going to have to help you with that.  Part of

17  the way that they help you is to acknowledge that as

18  well, not to blame it on other people, but to

19  understand that you do need some help getting over

20  this, and that you're actively seeking that help.

21       You also have a plan for your future.  That's

22  good.  Certainly it's good that you have a plan.  The

23  more education you get, the better.  That will open up

24  other job opportunities, whether they may be in the

25  paralegal field or some other field.  You may decide

that perhaps that's not what you want to do.  You may
talk to Mr. Murphy, and he may tell you that getting
in the law business isn't the best thing in the world
to do.  But that may be what your calling is, and you
may want to -- you may want to do that, and, of
course, you'll have the opportunities to do that
because you're still a young man.  But I do think that
treatment is -- will be beneficial for you.

        The Court also considers issues of
deterrence.  Now, Congress has considered deterrence
obviously by setting these mandatory minimums in these
cases.  The Sentencing Commission, when it makes
determinations as to enhancements in calculating the
guideline range, they certainly take these factors
into account and the seriousness of these matters and
the issue of deterrence in the decisions that they
make, and so it's very clear that it's necessary for
this Court to impose a sentence that will not only
deter Mr. Whitson, but will also deter others that
might be inclined to engage in similar conduct.

        There are real victims in these cases even,
if it doesn't involve production, it only involves
possession, there are real victims that suffer very
serious damage as a result of conduct such as
demonstrated in this particular case.

1          Next, there's the issue of protection of the
2 public.  And that's another factor that the Court
3 considers when it determines not only the length of
4 the term of incarceration, but conditions of
5 supervised release.  And let me talk about that for
6 just a moment.  You know, we're sitting here in 2013,
7 and Mr. Whitson's looking at a fairly lengthy period
8 of incarceration.  When he finishes his sentence, some
9 of the terms of supervised release, some of these
10 conditions, may really be meaningless.  Technology is
11 such that at this time, we can't really predict what's
12 likely to happen 10 or 15 years from now.  So these
13 conditions that we're setting are conditions that are
14 designed to protect the public and to provide some
15 help to the defendant to avoid any further
16 violations.  But we're doing our best to guess, quite
17 frankly, what's going to be sufficient, how long is a
18 term that would be sufficient, and what conditions can
19 we impose.  I say that because I think what the
20 parties have suggested would be beneficial, not only
21 to the defendant, but to the Court as well, so we
22 don't outrun our coverage, so do speak.
23          So what I'm going to do is I'm going to set
24 what I believe would be an appropriate term of
25 supervised release with a provision that the Court

1  should revisit these terms of supervision in five
2  years after the defendant starts his term of
3  supervision, and again in another five years.  Now,
4  what I've determined, and although I certainly do
5  understand and appreciate the arguments that
6  Mr. Dotson has made in terms of a life period of
7  supervision, I agree with Mr. Murphy that while this
8  is a production case, there are cases which have been
9  presented to the Court that are much more egregious
10 than the case that's currently before the Court in
11 terms of the nature of production.  And when I look at
12 the defendant's entire history, I do believe in this
13 particular case that the public may be served and
14 protected by only imposing a term of supervised
15 release of 15 years, as opposed to a term of life.
16 Now again, that's with the understanding that the
17 Court's going to reassess in five years, and also in
18 ten years, and so there may be something that would be
19 less onerous, a provision that can be modified in
20 five -- after you've been on supervision for five
21 years, there may be something that the Court can do
22 that's less onerous that's not available to me now.
23 And quite frankly, I may not and would probably not be
24 here, not be in this position in 15 years, but it may
25 be someone else's decision to make.  But I certainly

1  want to give that person the option of imposing the

2  less restrictive conditions that can be imposed in the

3  case, while at the same time protecting the public.

4          What I've determined to do, again, is to

5  impose that term of supervised release of 15 years

6  with all of the standard conditions that have been

7  identified in the presentence report, with the

8  understanding that, again, when the Court revisits

9  these issues, it may be that there are other less

10  restrictive conditions that might be imposed at that

11  time.  So that's my intention.

12          THE DEFENDANT:  Okay.

13          THE COURT:  Again, the Court considers issues

14  of educational opportunities as well as vocational

15  training.  I am going to recommend that Mr. Whitson be

16  provided with all the educational and vocational

17  training for which he would qualify during his period

18  of incarceration.  And I'm also going to recommend, as

19  has been requested by counsel, an evaluation, and also

20  placement in the Sex Offender Management Program, if

21  he qualifies for the program, and based upon the

22  information that's been provided, it would appear to

23  me that he would qualify.

24          I will recommend placement.  First, I'm going

25  to recommend treatment as the first recommendation.

1   Location is the second recommendation.  And the reason
2   I'm doing that is I want to make sure you get in a
3   program first, but I want it to be as close as we can
4   get you to home as we can.  If, for example, the
5   facility at -- in North Carolina might be filled, or
6   doesn't have a vacancy, it may be a little bit further
7   away, but I want you to be able to get treatment
8   first, and then placement second, so that's the reason
9   I'm making the recommendations in that order.
10          I'm also considering the other factors,
11  including the need to avoid unwarranted sentencing
12  disparities among defendants with similar records
13  who've been found guilty of similar conduct.  It is
14  hard to compare defendants.  It is very hard to
15  compare defendants in terms of this factor in cases
16  such as this.  The Court looks at individual
17  characteristics.  Again, Mr. Whitson has a number of
18  very positive characteristics, and they shouldn't be
19  overlooked in this proceeding.  They're outlined in
20  the report.  His friends and family certainly are
21  aware of that.  The attorneys are aware of those
22  positive characteristics, but not everyone is.
23  Someone reading an article about Mr. Whitson may
24  overlook the positive characteristics, but this Court
25  is certainly familiar with those as set forth in his

1   report.

2          The Court also considers the statements that

3   have been made in allocution here today in making the

4   decisions that have been reached, so let me announce

5   the sentence.

6          And it will be the sentence of this Court

7   pursuant to the Sentencing Reform Act of 1984, as

8   amended and modified by the decisions in *Booker* and

9   *Fanfan*, and I do believe the following sentence would

10  be sufficient, but not greater than necessary, to

11  comply with the purposes of Title 18, Section 3553.

12         Accordingly, it will be the judgment of the

13  Court that the defendant, Eric Lance Whitson, also

14  known as Eric L. Whitson, will be committed to the

15  custody of the Bureau of Prisons for a term of 180

16  months on Count 1, which is the mandatory minimum in

17  that -- for that count, and 120 months on Count 4 to

18  run concurrently or at the same time for a total

19  sentence of 180 months.

20         It will be recommended that Mr. Whitson

21  participate in the Bureau of Prisons Sex Offender

22  Treatment Program, also that's been referred to as the

23  Sex Offender Management Program, as well as any

24  programs for alcohol abuse and programs that would

25  include educational opportunities, as well as

1   vocational training, and that would be all for which

2   he would qualify.

3          Upon release, he will be placed on supervised

4   release for a term of 15 years on each of Counts 1 and

5   4 to run concurrently, for a total of 15 years.  And

6   within 72 hours of release from the custody of the

7   Bureau of Prisons, the defendant shall report in

8   person to the probation office in the district in

9   which he is released.

10          Upon motion of the parties, one or other,

11   either the defendant or the United States, the Court

12   will revisit the following terms and conditions of

13   supervised release that will be imposed:

14          Now, there's some of these conditions the

15   Court will not revisit.  I'll mention those first, but

16   the Court will revisit the following -- a number of

17   the terms of conditions, five years following

18   placement on supervision and ten years after he's been

19   placed on supervision.  The ones that would not be

20   subject to review would be that while on supervised

21   release, the defendant shall not commit another

22   federal, state, or local crime, and shall comply with

23   the standard conditions that have been adopted by the

24   Court, and they included the following:

25          And that is that Mr. Whitson shall not

1  possess a firearm, destructive device, ammunition, or

2  dangerous weapon.

3           I will state that the drug testing condition

4  that is required by Title 18, Section 3553(a)(5) will

5  be suspended based upon my determination that

6  Mr. Whitson doesn't pose a risk of future substance

7  abuse.

8           Now, the conditions that will be imposed and

9  will be subject to review are as follows, and they're

10  the ones that deal with sex offender treatment and

11  other matters:

12           First, the defendant will be required to

13  participate in a program for treatment of mental

14  health or sexual disorders and shall undergo a sex

15  offender risk assessment, psychosexual evaluation,

16  and/or other evaluations as needed and be subject to

17  periodic polygraph examinations and/or computer voice

18  stress analysis.  And that's the testing that you'll

19  be subject to, and that will be at the discretion and

20  direction of the probation office, and he shall follow

21  all the rules and regulations of the Sex Offender

22  Treatment Program as implemented by the probation

23  office.  There will be a residence restriction, and

24  that is the defendant's residence and employment shall

25  be approved in advance by the probation office, and it

1   must be in compliance with state and local law.

2          There will be a restriction on contact with

3   minors, and that is, the defendant shall not frequent,

4   volunteer or work at places where children under the

5   age of 18 congregate, and that would include

6   playgrounds, parks, day care centers, public swimming

7   pools, youth centers, and video arcades, but that is

8   unless it's approved by the probation officer in

9   advance.  And he shall have no contact with identified

10  victims, and those victims being identified in the

11  presentence report, as well as any other victims that

12  may be subsequently identified under Count 4.

13         The defendant shall not associate or have

14  verbal, written, telephonic or electronic

15  communication with any person under the age of 18

16  without the permission of the probation office.  Now,

17  this does include or encompass persons under the age

18  of 18 such as ticket vendors, cashiers, waitresses,

19  and others in similar situation with whom the

20  defendant must deal in order to obtain ordinary and

21  usual commercial services.

22         With regard to restriction on materials,

23  Mr. Whitson shall not possess, view, listen to or go

24  to locations where any form of pornography,

25  sexually-stimulating performances or sexually-oriented

materials, items or services are available, and he shall not possess or use a device capable of creating pictures or videos without the approval of the probation office.

In terms of restriction on access, he shall not rent or use a post office box or storage facility without the approval of the probation officer, and he will be required to register as a sex offender as prescribed by state law.

In terms of computer restrictions, he may not possess or use a computer or any device with any access to any on-line computer service at any location, including place of employment, without the prior approval of the probation office. And this would include any Internet service provider, bulletin board system or other public or private network or email system. Again, this would be subject to approval by the probation office.

He shall consent to the probation office conducting unannounced examinations of his computer system. That would include any internal or external storage devices, and that may include retrieval and copying of all memory from the hardware or software of the computer and the removal of the systems for the purpose of conducting a more thorough inspection, and

1 he'll also consent to have installed on his computer

2 any hardware or software to monitor his computer use

3 to prevent access to particular materials.  And he

4 must consent to periodic inspection of any installed

5 hardware or software to ensure that it's functioning

6 properly.

7 　　　　　He will be required to provide the probation

8 office with accurate information about his entire

9 computer system.  That would include the hardware and

10 software systems and any internal or external storage

11 devices, and he must be able to provide all passwords

12 used by him, and he will be required to abide by all

13 rules of the computer restriction and monitoring

14 program.

15 　　　　　I will include a search condition, and that

16 is that he'll be required to submit his person,

17 residence, office, vehicle, or any property under his

18 control to a search conducted by the United States

19 Probation Office at a reasonable time and in a

20 reasonable manner based upon reasonable suspicion of

21 contraband or evidence that would be in violation of

22 the condition of release.  He's also advised that the

23 failure to submit to a search may be grounds for

24 revocation of supervision.  And he will be required to

25 inform any other residents that his -- that the

1 premises may be subject to search pursuant to this

2 condition.

3          In terms of financial disclosure, he'll be

4 required to provide the probation office with access

5 to any requested financial information, and this

6 special condition for financial disclosure is included

7 as a means of allowing the probation office to monitor

8 purchases of electronic and/or peripheral devices as

9 well as any internal services or either subscribe to

10 or accessed to by the defendant.

11          Now, again, the Court has advised that none

12 of the identified victims have made a request for

13 restitution in the case, and, therefore, the Court

14 finds that determining complex issues of fact-related

15 or to the cause of the amount of the victims' losses

16 would complicate or prolong the sentencing process,

17 and, therefore, the weight would be a burden to the

18 victims, and, therefore, pursuant to Title 18, Section

19 3663(a), the Court will not order restitution in the

20 case.

21          Additionally, based upon Mr. Whitson's

22 current financial situation, the Court will not impose

23 a fine in this matter.  However, he will be required

24 to pay the special assessment of $100 per count, or a

25 total of $200, and that amount will be due

1  immediately.

2        There is a forfeiture count contained in the

3  indictment, and he will be required to forfeit any

4  interest in the items listed in the forfeiture count,

5  and the forfeiture will be reflected in the judgment

6  in the case as well.

7        In looking at the plea agreement itself under

8  paragraph 8, the defendant has waived the right to

9  appeal the guilty plea, conviction, and he's also

10 waived the rate to appeal the sentence, unless, of

11 course, the sentence were to exceed 180 days, in which

12 case, he reserved his right to appeal.  The Court has

13 not imposed a sentence in excess of the mandatory

14 minimum in the case, and, therefore, his right to

15 appeal has been waived.  I'm not going to ask the

16 clerk to advise him of that right based upon the

17 provision, but I will note for the parties' reference

18 that, of course, in any event either party believes

19 that the waiver provision would not apply, any notice

20 of appeal must be filed within 14 days to be timely

21 filed.  And that will be the judgment in the case.

22       I believe I have addressed the parties'

23 request in terms of recommendations to be made to the

24 Bureau of Prisons.  But before I ask if there's any

25 objection, let me make sure that I've addressed all

1  the parties' requests.

2          Mr. Murphy, anything that I've neglected

3  to --

4          MR. MURPHY:  No.  We're satisfied, Your

5  Honor, and we appreciate your having gone along with

6  some of our suggestions.

7          THE COURT:  All right.  Thank you.  Any --

8  Mr. Dotson, any additional matters to be taken up?

9          MR. DOTSON:  The only other matter, Your

10  Honor, is we would ask that the forfeiture be included

11  as part of the judgment.

12          THE COURT:  Yes.  It will be included.  It

13  will be listed in the judgment itself.  I didn't read

14  the forfeiture items, but they will be listed in the

15  judgment.

16          MR. DOTSON:  Yes, sir.  Thank you.

17          THE COURT:  Do you have any objection to the

18  sentence imposed by the Court first?  Second, any

19  objection to any of the proceedings under *United*

20  *States V. Bostick*?  Of course, as you know, any

21  objections not previously raised would need to be

22  raised at this time so that they may be addressed by

23  the Court and then properly preserved for review on

24  appeal.

25          MR. DOTSON:  No objections, Your Honor.

```
 1              THE COURT:  Any request for additional
 2      findings?
 3              MR. DOTSON:  No, Your Honor.
 4              THE COURT:  All right.  Thank you.
 5              Mr. Murphy, the same question, any
 6      objections first, any Bostick objections second,
 7      and any request for additional findings?
 8              MR. MURPHY:  No, no and no.  Thank you.
 9              THE COURT:  All right.  Thank you.  I have
10      signed the plea agreement.  It will be filed in the
11      record at the conclusion of the proceedings.
12              You'll note on the plea agreement, the
13      matter was originally scheduled for sentencing
14      proceeding, and I had signed that plea agreement at
15      the beginning of the proceeding, and then there was
16      a request that the Court not continue with the
17      proceeding that day, and that's why you may find
18      that my signature looks a little bit unusual.  It's
19      been whited-out, and I've just signed it again
20      today following this proceeding.
21              All right.  Thank you, counsel.  Are there
22      any other issues that need to be taken up in the case
23      at this time?  Mr. Dotson, anything for the
24      government?
25              MR. DOTSON:  None that I'm aware of, Your
```

1    Honor.

2              THE COURT:  Mr. Murphy?

3              MR. MURPHY:  No, Your Honor.  Thank you.

4              THE COURT:  Mr. Whitson, good luck to

5    you.

6              THE DEFENDANT:  Thank you, Your Honor.

7              THE COURT:  If there's nothing else to be

8    taken up in the case, we will be in recess until

9    court in course.

10             [END OF PROCEEDINGS - 11:43 a.m.]

11                      * * * * *

12             I certify that the foregoing is a correct

13   transcript from the record of proceedings in the

14   above-entitled matter.

15

16             */s/ Sandy C. Wilder*

17             SANDY C. WILDER, RMR, CRR,

18             COURT REPORTER        Date:  12/12/2013

19

20

21

22

23

24

25